[No. 11124.   Department One.   October 21, 1913.]

## A. A. BATCHELLER et al., Respondents, v. SUSAN ELIZABETH HULME et al., Appellants.[1]

CONTRACTS—PERFORMANCE OR BREACH — EVIDENCE — SUFFICIENCY.
An agreement by a practical manufacturer of machinery to build a
motor and pump to demonstrate the feasibility of a scheme, the
success of which was problematical, in consideration of a half in-
terest in the profits and of a conveyance of land as security for the
expenses incurred, the land to become his absolutely in case the
machine was a failure, is not performed upon his part and the evi-
dence is sufficient to support findings that it was not shown to be
a failure so as to entitle him to the land, where the machine when
set up did not work to the satisfaction of either party, and there
was evidence that the gears were out of alignment and did not mesh
properly, and were cast when good construction called for cut gears,
that there was a fault in the sleeve shaft of the pump, and that the
machine pounded and stopped frequently and was so noisy that it
could be heard half a mile away; notwithstanding he might have
been justified, under the contract, in his refusal to salve and repair
it after it had been torn from its moorings by a passing steamer;
since he was bound to construct a machine free from mechanical and
structural defects.

SAME. In such a case, the manufacturer cannot shield himself
by a reference to the plans and specifications for the machine, since
the defects shown depended upon the skill of the workman rather
than written plans, and the plans, if defective, would have been re-
jected.

Appeal from a judgment of the superior court for Frank-
lin county, Holcomb, J., entered September 14, 1912, upon
findings in favor of the plaintiffs, in an action to cancel a deed
and to quiet title.   Affirmed.

*Hughes, McMicken, Dovell & Ramsey* and *Otto B. Rupp*,
for appellants.

*Gerard Ryzek*, for respondents.

CHADWICK, J.—A. A. Batcheller and Isaac Hulme asso-
ciated themselves in an enterprise designed to exploit a cur-

[1]Reported in 135 Pac. 802.

rent motor and pump theretofore designed and patented by one Courtright. Hulme was a man of means and the owner of the Vulcan Iron Works in the city of Seattle. Batcheller owned certain desert land bordering the Columbia river, and had become impressed with the feasibility and practicability of the motor. The parties reduced their contract to writing,

"July 30th, 1907.

"Be it known to whom it may concern, that we the undersigned, I. Hulme, Mgr. of the Vulcan Iron Works, of Seattle, Washington, party of the first part, and A. A. Batcheller, civil and hydraulic engineer, of the same place, party of the second part, enter into the following agreement, to wit:

"Being desirous of proving the practicability of a certain motor and pump, known as the Courtright Undulating Current Motor and Pump, we hereby agree to build a plant of the said motor and pump, according to plans we now have on hand, same to be located at a place on the Columbia river known as Strump's Rapids, six (6) miles above the town of Pasco in Franklin county, Washington, the party of the first part hereby agreeing to build said plant at his shop, The Vulcan Iron Works, city of Seattle, and to pay all the necessary expenses of installing the same, and the party of the second part agreeing to pay one half of all the said expenses by the following arrangement:

"Said party of the second part owns the southeast quarter section 21, township 9 N. range 29 E., in said Franklin county, state of Washington. When it is proven that said pumping plant is a success, the said party of the first part agrees to pay the sum of ($3000) Three Thousand Dollars for one-half interest in said one quarter section, and the said party of the second part, in order to guarantee the one-half costs of said plant and expenses, agrees to give the said party of the first part a deed to the whole of said land, being one-half interest in said plant, above the price of Three Thousand Dollars ($3000), and to be held by the said party of the first part as a guarantee of one-half of said expenses as above named, and when the same is fully satisfied by the party of the second part, by the sale of water or other interests in relation to said plant, the party of the first part shall then deed one-half interest in said land to the party of the second part, the essence of this agreement being to show that

each will stand one-half of all expenses of installing of said plant, and to share equally alike in all profits of the same, the above agreement being simply to guarantee the party of the first part in the loaning of one-half the necessary funds for the said plant and expenses, and to guarantee the refund of the same.

"If the said plant should become a failure, the party of the first part shall retain all interest in the said land, and this agreement become null and void.

"This agreement shall hereby bind all their heirs, executors or assigns of same.

"Witness our hands the day and year as above written.

"I. Hulme,

"A. A. Batcheller."

Batcheller executed a deed to the whole of the land described in the contract, and Hulme undertook to, and did, complete the pump and motor, which was set up at the iron works for a shop trial and was thereafter shipped to Kennewick and from there transported to the place intended, where it was attached to two barges which had been constructed for the purpose. The machine did not work successfully. It raised water, but not in sufficient quantities or to a sufficient height to meet the objects intended. It was the opinion of Mr. Hulme that the motor was all right, but that the trouble was in the pump. It is now contended that the scheme was visionary and contrary to the principles of natural philosophy. The fault, according to Batcheller, was in construction, and because of a pier which deflected or impeded the natural flow of the water. A passing steamer collided with the supporting scows and tore them from their moorings. The machinery lodged in the stream some distance below. Batcheller demanded that Hulme replace the motor. Upon his final refusal to do so and upon his assertion of title to the entire tract of land described in the contract, Batcheller brought this suit, claiming the fact to be that the motor and pump had been demonstrated to the entire satisfaction of Hulme, that he had refused to replace and repair the motor after it had been torn from its moorings, with fraudulent intent to make the machine a failure and to

obtain title to the land, as in the event of that contingency it had been provided in the contract.

The court found generally in favor of the plaintiffs, and particularly that the machine had been demonstrated to the entire satisfaction of Hulme, and that it was incumbent upon him to replace and repair the motor, and that he refused to do so, with intent to defraud plaintiffs and to claim the land as his own.

The record is involved. A careful reading of the testimony convinces us, unless the contract is entirely ignored, that Hulme was not bound to salve, restore and repair the derelict machine, and that he was guilty of no fraud or dishonest intent that would warrant the aspersions put upon him by counsel and as found by the court. The venture was like all such ventures. To a third person, or as we view such things in retrospect, its success was problematical. The parties were sounding in an uncharted sea. This we say advisedly, and notwithstanding the spoken testimony of a witness that a like machine had passed a successful test elsewhere. No fact or circumstance is detailed that convinces us that it is so. Men who are engaged in such ventures are usually inspired by hope, and the declaration of Mr. Hulme that the machine was all right must be considered in connection with the fact that he had invested, as he claimed, over $10,000 in the enterprise, and it is not to be expected that he would doubt the fallibility of his judgment until his error had been clearly demonstrated. The question to be decided is not whether in Mr. Hulme's opinion the machine was a success, but whether it was in fact so. We are not convinced that the machine would not have been a success nor are we convinced that it would have been. The testimony is conflicting. It did not work to the satisfaction of either party. The court found:

"That after the execution of said agreement on the part of both parties, the said Isaac Hulme manufactured a certain quantity of machinery for said motor and pump, but said machinery manufactured by said Hulme was defective

in material used, and in make, form and construction and was easily broken by reason thereof, and the pinions and castings were misfit and poorly cast and by reason thereof said motor and pump could not be placed in a practicable working condition."

Notwithstanding our conclusions upon the issue of fraud, we think the evidence sustains this finding and that it is sufficient to warrant the judgment.

There was evidence tending to show that the gears did not mesh properly; that they were out of alignment; that good construction called for cut gears, whereas, those furnished were cast; that there was a fault in the sleeve shaft of the pump so that the paddle had to be cut; that the machine pounded and stopped from time to time so that it had to be started with a pinch bar; and as evidencing these defects, it is said that the machine was so noisy that it could be heard a half a mile away.

It was the duty of Mr. Hulme to build a machine free from mechanical and structural defects that might be attributable to defective materials and poor workmanship. If he did not do so, he will not be heard to claim that the machine was fundamentally and scientifically a failure. Batcheller was entitled to a piece of construction reasonably free from defects before the principle of the machine could be put to the test. The appellants insist that it was so, but the evidence is conflicting and the trial judge has decided the fact in respondents' favor.

We have not overlooked the contention of appellants that the burden is upon respondents to show that the machine was not built in accordance with the plans and specifications, and that they did not offer the plans in evidence, and that such as were offered, being a part of the whole, were offered by the defendants. We think this contention is without merit. Mr. Hulme was a practical mechanic, and the foreman of construction was a man of great experience; we may assume that such questions as the meshing of gears and their alignment

depend upon the skill of the workman rather than upon written plans, and that, if the plans were imperfect in this respect, Mr. Hulme, whose interest in the machine was greater than was that of any one else, would have rejected them. We cannot say, upon the record, that the machine was a failure. Unless it was, appellants cannot hold all the land.

Affirmed.

CROW, C. J., GOSE, PARKER, and MOUNT, JJ., concur.