## STATE v. BONER
(No. 1598; May 21, 1930; 288 Pac. 13)

Cause submitted for the appellant on the brief of *Thomas M. Fagan,* of Lusk, Wyoming.

The cause was submitted for respondent on the brief of *W. O. Wilson,* Attorney General, *James A. Greenwood,* Deputy Attorney General, and *Philip S. Garbutt,* Assistant Attorney General, of Cheyenne, Wyoming.

KIMBALL, Justice.

Defendant appeals from a judgment on a verdict of guilty on an information under Section 3, Chapter 117, Laws of 1921, charging unlawful possession of three ten-gallon kegs of moonshine whiskey.

The State's evidence was sufficient to justify the belief that the facts were substantially these. The ranch lands and buildings occupied by defendant were searched on March 15 and 16, 1927, by five officers—the sheriff of Niobrara County, two state law enforcement officers and two federal prohibition officers. During the search the officers found the three kegs of whiskey in a wash near a creek about 300 yards from the ranch buildings. While four of the officers were searching nearby lands, one officer stayed with defendant about the buildings. The officer who stayed with defendant testified that when the liquor was found he and defendant could see the other officers picking up the kegs, and that defendant then remarked: "They've found it."[1] Witness Wyckoff, who had worked for defendant, testified that a few days before the search he filled four kegs with whiskey which he had made for defendant, and, at defendant's request, put the filled kegs in a wash some 300 yards from the house. This witness positively identified the kegs found by the officers as being three of the four he had put there a few days before the search, stating that he had painted the kegs and fitted the corks.

The defendant testified that the whiskey was not his, and that he knew nothing about it until after the officers

had it in their car. He claimed that it was not found on lands occupied by him, and if it was, it had been put there without his knowledge. He flatly denied the testimony of witness Wyckoff as to the making and hiding of the whiskey, and claimed that Wyckoff had not been at the ranch for two or three weeks before the search.

By the cross-examination of the witness Wyckoff it was made to appear that he had been convicted of manufacturing whiskey and was at liberty under parole. It also appeared that the witness had had trouble with defendant on a question of wages, and probably was glad to have the defendant prosecuted and anxious to have him convicted. In the course of the cross-examination, defendant's counsel asked the witness if he didn't write a letter to Mrs. Colvin. The prosecuting attorney objected on the ground that the answer would be incompetent, irrelevant and immaterial, and the letter was the best evidence. The judge sustained the objection and said, "I don't think you can go into that." Defendant's attorney excepted, and then this colloquy followed:

Mr. Fagan (defendant's attorney): "We offer to prove —I want to make an offer of proof in the absence of the jury, your Honor."

The Court: "I am going to adjourn now in a few minutes, and then you can make your offer."

Mr. Fagan: "If the court please, my cross-examination will depend entirely upon the admission of this."

The Court: "Very well." (Court recessed).

The Court (after the recess): "Have you made your offer, Mr. Fagan?"

Mr. Fagan: "I will not press the matter, if the court please."

The Court: "The objection will be sustained."

It is contended that by sustaining the objection the judge unduly restricted defendant in his right of cross-examination. We do not think so. The question to which the objection was sustained was merely preliminary. The

judge was not informed of the purpose of the inquiry. Counsel when he said that he would make an "offer of proof," evidently intended to make some statement that would show more clearly the purpose and importance of his question, before the point was finally disposed of. When he later informed the judge that he would "not press the matter," the judge was justified in believing that counsel either confessed the objection or considered the matter unimportant. That view was confirmed when the objection was again sustained and no exception was taken. It is not to be inferred from what we have said that the sustaining of the objection would have been prejudicial error, or error at all, even if counsel had insisted on his right to put the question. See: Henderson v. Coleman, 19 Wyo. 183, 227, 115 Pac. 439, 451, 1136; Jenkins v. State, 22 Wyo. 34, 58-59, 134 Pac. 260, 262, 135 Pac. 749.

The defendant claims he was prejudiced by testimony of the sheriff that he found barrels, which he called "mash barrels," at various places visited by him during the search, and by his reference to a "still house." Most of this evidence was received without objection or motion to strike, and much of the most damaging of it was brought out on cross-examination. In the direct examination the witness was not asked anything about the mash barrels, but in an answer that was not responsive to the question, he stated that he found 23 or 24 empty mash barrels in "a shack east of Mr. Boner's." Defendant moved to strike out the testimony on the ground that it was evidence of another crime and because the barrels were not on defendant's premises. Defendant's exception to the denial of that motion is the only exception to the reception of, or the refusal to strike, evidence of that kind. The testimony as to the location of the building called the "shack" seems to indicate that it was about three-fourths of a mile from defendant's ranch buildings. On cross-examination the witness, being asked whether he found anything on the 16th, replied, "I found a lot of empty mash barrels in

the still house." This "still house" was 3 miles from defendant's ranch buildings. The witness testified further during cross-examination that he found on defendant's premises "five empty mash barrels freshly scrubbed around the edges"; that "one was in the bunkhouse with water in, and if you dipped the water up you could smell the odor of whiskey." Also, that when he went "down to another fence," he found "twelve empty kegs and several empty jugs." Asked on cross-examination the question: "You didn't find enough to charge him (defendant) with the possession of these mash barrels?" the witness replied, "I found a lot of them out there in one place, but we didn't charge anything about them because they wasn't being used in the manufacture of whiskey." There was evidence that when the officers asked defendant if he had any objection to a search of his premises, he replied: "No, go right ahead. There might have been a time when you could (have) come out here and found a still and whiskey, but I've quit."

We need not decide whether the testimony as to the finding of the mash barrels was admissible either on the question of defendant's knowledge of the whiskey found, or to corroborate the testimony of the witness Wyckoff. Whatever might be said as to the admissibility of the evidence, it is clear that there was so much of it received without objection, that the defendant could not have been prejudiced by the admission of that part which the court refused to strike out.

The jury by an instruction on the subject of the credibility of witnesses were told among other things that they should take into consideration "the interest, if any, which any witness may have in the outcome of the trial, the prejudice or motives, or feelings of revenge, if any has been shown." There is no criticism of that instruction, but defendant contends that the judge erred in refusing to give an offered instruction telling the jury "that greater care should be exercised in weighing the testi-

mony of witnesses especially employed to procure evidence against the defendant than in the case of persons wholly disinterested.'' The same instruction was offered and not given in Jenkins v. State, supra, where, as in the case at bar, several of the State's witnesses were officers. We may apply here the following language from that case (22 Wyo. at p. 78, 134 Pac. 260, 268, 135 Pac. 749):

''This instruction has sometimes been given and approved in cases where the prosecution relies upon evidence furnished for pay or reward by a detective agency. In the case here no such evidence is relied on, and the record is wholly lacking in evidence tending to show that any informers, detectives or other persons especially employed to hunt up evidence testified in the case. The court very properly refused to give such an instruction.''

In Strand v. State, 36 Wyo. 78, 88, 252 Pac. 1030, we said that usually questions as to the credibility of witnesses may safely be left to the jury with the customary instruction on that subject, without any special reference to a particular witness. See, also, Murdica v. State, 22 Wyo. 196, 208, 137 Pac. 574; Flanagan v. State, 117 Neb. 531, 221 N. W. 420.

Other specifications of error that are argued in the brief do not seem to present any matter of sufficient importance to require discussion in this opinion. The record shows no error prejudicial to defendant, and the judgment therefore must be affirmed.

*Affirmed.*

BLUME, C. J., and RINER, J., concur.